**UNITED STATES BANKRUPTCY COURT**　　　　NOT FOR PUBLICATION
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------- x
In re:                                                              :
                                                                     :　Case No. 20-11585 (JLG)
Rachel Uchitel,                                                :
                                                                     :　Chapter 7
　　　　　　　　　　　　Debtor.　:
-------------------------------------------------------- x


**MEMORANDUM DECISION AND ORDER RESOLVING**
**THE HOLTZ FIRM'S MOTION FOR RELIEF FROM STAY *NUNC PRO TUNC***

**A P P E A R A N C E S :**


BRUTZKUS GUBNER
*Counsel to Creditor, The Holtz Firm*
*Party One A and Party One B*
5445 DTC Parkway, Suite 825
Denver, Colorado 80111
By:　　Jerrold L. Bregman, Esq.


ABRAMS FENSTERMAN,
FENSTERMAN, EISMAN, FORMATO,
FERRARA, WOLF & CARONE, LLP
*Counsel for the Debtor*
160 Linden Oaks, Suite E
Rochester, New York 14625
By:　　Maureen T. Bass, Esq.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

## **Introduction**[1]

Rachel Uchitel (the "Debtor") is a chapter 7 debtor who commenced her voluntary no

asset bankruptcy case in this Court (the "Chapter 7 Case") on July 7, 2020 (the "Petition Date").

As of that date, she was party to the Settlement and Confidentiality Agreement with Party One A

and Party One B pursuant to which she received a payment in consideration for, among other

things, her undertaking in the agreement (the "Non-disclosure Undertaking") to refrain from

disclosing certain information that she agrees is "Confidential Information", as that term is

defined in the agreement.[2] The agreement calls for both monetary damages and injunctive relief

---

[1]    Capitalized terms will have the meanings ascribed to them herein. References to "ECF No __" herein are to documents filed on the electronic docket in this Chapter 7 Case No. 20-11585 unless otherwise indicated.

[2]    The Settlement and Confidentiality Agreement dated December 3, 2009, is supplemented by a side letter and amendment (collectively, the "Settlement and Confidentiality Agreement"). The Movant did not submit copies of those documents in support of the Motion. During argument of the Motion, the Court requested the Movant to supplement the record of the Motion by filing copies of those documents, together with the Demand for Arbitration dated November 5, 2020 (the "Initial Arbitration Demand"), and the Proposed Amended and Superseding Demand For Arbitration For (1) Breach of Contract [and] (2) Breach of Implied Covenant of Good Faith and Fair Dealing, undated (the "Proposed New Arbitration Demand"), of record. In response to the Court's request, and consistent with the Court's Chambers Rules, the Movant submitted copies of those documents (collectively, the "Subject Documents") to the Court (and has provided copies of the documents to Debtor's counsel), without first filing any of them on the public record of the Chapter 7 Case.

In submitting those documents, the Movant requested leave pursuant to sections 105 and 107 of the Bankruptcy Code to file them under seal (the "Motion to Seal"). Specifically, it asked the Court for leave (i) to file the Subject Documents in unredacted form under seal, and (ii) to redact from the Subject Documents before filing them on the public record. In making that request, the Movant advised that it did not object to filing the Initial Arbitration Demand and Proposed New Arbitration Demand of record in unredacted form. The Debtor objected to the Motion to Seal.

The Debtor is party to the Settlement and Confidentiality Agreement and has been provided with copies of the Initial Arbitration Demand and the Proposed New Arbitration Demand. Without limitation, under the Settlement and Confidentiality Agreement, the Debtor and Party One A and Party One B agreed to keep the terms of the agreement confidential. In that light, after considering the Debtor's objection to the Motion to Seal, the Court determined that it would not require the Movant to file the Settlement and Confidentiality Agreement of record but, instead, would review the agreement *in camera*. However, the Court determined that it would utilize the Initial Arbitration Demand and Proposed New Arbitration Demand as unredacted documents filed of record in the Motion. To the extent that the Court refers to the Settlement and Confidentiality Agreement herein, it is not waiving the confidentiality or non-disclosure provisions of those agreements.

as remedies for breach of the agreement. It also provides that the exclusive manner for resolving claims arising under the agreement is through confidential arbitration under the JAMS Rules in Los Angeles, California.

The Holtz Firm ("Holtz"), as counsel to Party One A and Party One B, contends that subsequent to the Petition Date, the Debtor breached the Non-disclosure Undertaking in the Settlement and Confidentiality Agreement. On September 28, 2020, Holtz, on behalf of Party One A and Party One B, sent an Arbitration Demand Letter to the Debtor's counsel. On November 9, 2020, Holtz filed its Initial Arbitration Demand with JAMS, on behalf of Party One A and Party One B, commencing an arbitration proceeding (the "Arbitration") under the Settlement and Confidentiality Agreement. Holtz sent the Arbitration Demand Letter to the Debtor's counsel and filed the Initial Arbitration Demand with JAMS to commence the Arbitration without obtaining relief from the automatic stay under section 362 of the Bankruptcy Code. Holtz maintains that it did not seek stay relief because, in September and November 2020, Holtz, Party One A and Party One B were not on notice of the Chapter 7 Case. Holtz contends that it did not learn of the pendency of the Chapter 7 Case until Holtz received notice from the Clerk of the Court of the Debtor's discharge in bankruptcy dated February 1, 2021.

After Holtz learned of the Chapter 7 Case, it took no action in connection with Arbitration other than to request the JAMS arbitration panel to stay the Arbitration. Thereafter, it filed a motion to reopen the Chapter 7 Case for the purpose of filing a motion for *nunc pro tunc* stay relief essentially to validate the Initial Arbitration Demand.[3] The Court granted the motion

---

[3]    *See* Motion to Reopen Case to Permit Filing and Adjudication of a Motion for Relief from Stay *Nunc Pro Tunc*, Pursuant to Section 350(b) of the Bankruptcy Code, Federal Rule of Bankruptcy Procedure 5010, and Local Rule 5010-1, ECF No. 15 (the "Motion To Reopen Case").

to reopen the Chapter 7 Case.[4] Thereafter, Holtz (the "Movant") filed a motion on behalf of Party

One A and Party One B for the entry of an order granting relief from the automatic stay *nunc pro*

*tunc* to September 28, 2020, including a "comfort order" that Holtz did not violate the automatic

stay for action taken before Holtz received notice of the Chapter 7 Case, and authorizing Holtz to

continue to prosecute the Initial Arbitration Demand, but only for violations of the Settlement

and Confidentiality Agreement after the Petition Date (the "Motion" or "Stay Relief Motion").[5]

      The Stay Relief Motion is the matter before the Court. In the Initial Arbitration Demand,

Holtz seeks monetary damages from the Debtor on account of her alleged Breach of Contract

and Breach of the Implied Covenant of Good Faith and Fair Dealing under the Settlement and

Confidentiality Agreement. In opposing the Motion, the Debtor contends, and Holtz does not

dispute, that those damage claims were discharged in the Chapter 7 Case, and, as such, Holtz is

enjoined pursuant to section 524(a)(2) of the Bankruptcy Code (the "Discharge Injunction") from

prosecuting the Initial Arbitration Demand.

      In response to the objection, Holtz modified the relief it is seeking in the Motion. Now,

Holtz seeks to file a new arbitration demand (defined below as the "Proposed New Arbitration

Demand"), that it proposes will relate back to, and amend and supersede the Initial Arbitration

Demand, and under which Holtz will seek only injunctive relief to bar the Debtor's alleged post-

---

[4]   *See* Order Reopening Case, ECF No. 24.

[5]   *See* Motion for Relief from Stay *Nunc Pro Tunc*, Pursuant to Section 362(d)(1) of the Bankruptcy Code, Rules 40001 and 9014 of the Federal Rules of Bankruptcy Procedure, and Local Rule 4001-1, ECF No. 25. *See also* Request for Judicial Notice of Debtor's Voluntary Petition, Certain Amended Schedules, and Discharge Notice In Support of Motion for Relief from Stay Nunc Pro Tunc, Pursuant to Section 362(d)(1) of the Bankruptcy Code, Rules 4001 and 9014 of the Federal Rule of Bankruptcy Procedure, and Local Rule 4001-1, ECF No. 27. The Debtor did not respond to that request. In resolving the Stay Relief Motion, the Court will take judicial notice of the Debtor's Petition, the First Amended Schedules, the Second Amended Schedules, Third Amended Schedules, Fourth Amended Schedules, and the Discharge Notice. The Court also will take judicial notice of the Fifth Amended Schedules.

petition breaches of the Non-disclosure Undertaking in the Settlement and Confidentiality

Agreement. There is no dispute that Holtz's claims under the Settlement and Confidentiality

Agreement for injunctive relief enjoining the Debtor from violating the Non-disclosure

Undertaking, are non-dischargeable claims in the Chapter 7 Case. In the Stay Relief Motion, as

modified, Holtz seeks the entry of an order of this Court granting stay relief *nunc pro tunc* to

September 28, 2020, including a "comfort order" granting stay relief to cover action taken before

Holtz received notice of the Chapter 7 Case, and authorizing Holtz to continue to prosecute the

extant Arbitration, as modified and superseded by the Proposed New Arbitration Demand to

enforce the Non-disclosure Undertaking in the Settlement and Confidentiality Agreement, but

only to enjoin any such violations occurring after the Petition Date. Holtz contends that it is

entitled to such relief because the relevant *Sonnax* Factors provide grounds for granting it leave

to continue the Arbitration, and because under the *Stockwell* Factors, it is entitled to *nunc pro

tunc stay* relief to do so.

The Debtor objects to the Motion, as modified. Essentially, she maintains, among other

things, that Holtz should not be permitted to prosecute the extant Arbitration, even as amended

by the Proposed New Arbitration Demand, because she is penniless and if she is forced into an

arbitration proceeding, she will likely default and effectively be denied her fresh start in

bankruptcy. She contends that application of the twelfth *Sonnax* Factor (impact of the stay on the

parties and the balance of harms) mandates that the Court deny Holtz's request to continue the

extant Arbitration, even as modified to seek only injunctive relief. She also contends that, in any

event, if the Court finds grounds for authorizing Holtz to file and prosecute the Proposed New

Arbitration Demand, the Court should not grant Holtz *nunc pro tunc* stay relief to do so by

amending and superseding the Initial Arbitration Demand, because Holtz acted in bad faith in

filing that demand, and was on notice of the Chapter 7 Case from late October 2020, and, as

such, cannot satisfy the *Stockwell* Factors.

The Court heard argument on the Motion. As discussed below, the Arbitration Demand

Letter and Initial Arbitration Demand are null and void, and unenforceable because Holtz

violated the automatic say when it sent the letter and filed the arbitration demand. In contrast to

the damage claims underlying the Initial Arbitration Demand, the claims for injunctive relief at

issue in the Proposed New Arbitration Demand are not subject to the Discharge Injunction

because they are not dischargeable in bankruptcy. Under the Settlement and Confidentiality

Agreement, Holtz and the Debtor have agreed that the exclusive manner for resolving disputes

arising under the agreement is through confidential arbitration under the JAMS Rules in Los

Angeles, California. The *Sonnax* Factors are not relevant to the issue of whether the Court should

grant Holtz leave to file the Proposed New Arbitration Demand. Rather, in considering that

issue, the Court gives effect to the strong federal policy favoring arbitration in cases, like this

one, where the parties have agreed to arbitrate, all the claims in dispute fall within the scope of

the arbitration provision, and there are no statutory claims at issue. Thus, the Court finds that

there are grounds for granting Holtz leave to file the Proposed New Arbitration Demand. Based

on the record of the Motion, the Court finds that Holtz acted in good faith in sending the

Arbitration Demand to the Debtor's counsel and in filing the Initial Arbitration Demand with the

JAMS arbitration panel. Still, the Court denies Holtz's request for *nunc pro tunc* stay relief to file

the Proposed New Arbitration Demand to amend and supersede the Initial Arbitration Demand

because it has failed to demonstrate that application of the *Stockwell* Factors supports its request

for retroactive stay relief. With that, the Court also denies Holtz's request for a comfort order

granting stay relief to cover action taken before Holtz received notice of the Chapter 7 Case.

6

The Court discusses those matters below.

## Jurisdiction

This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference from the United States District Court for the Southern District of New York dated January 31, 2012 (Preska, C.J.). This is a "core proceeding" under 28 U.S.C. § 157(b)(2).

## Background

On July 7, 2020, the Debtor filed a petition for relief (the "Chapter 7 Petition") and commenced a voluntary case under chapter 7 of the Bankruptcy Code in this Court.[6] As of the Petition Date, the Debtor was party to the Settlement and Confidentiality Agreement with Party One A and Party One B. Pursuant to that agreement, the Debtor received a payment in consideration for her undertaking to refrain from disclosing certain Confidential Information. In substance and in part, the agreement provides that the exclusive manner for resolving claims under the agreement is through binding, confidential arbitration under the JAMS Comprehensive Arbitration Rules and Procedures (including Interim Measures) (the "JAMS Rules"), in Los Angeles, California before a sole arbitrator to be selected by the parties.

On the Petition Date, the Debtor filed her schedules and disclosures, including schedules listing her unsecured creditors (the "Unsecured Creditor List") and a creditor matrix.[7] The Debtor did not identify either Holtz, Party One A or Party One B as a creditor in the Unsecured Creditor List and creditor matrix.

---

[6] *See* Official Form 101 Voluntary Petition for Individuals Filings for Bankruptcy, ECF No. 1.

[7] *See id.*

On July 20, 2020, the Debtor filed her First Amended Schedules which did not include either Holtz, Party One A or Party One B as an Additional Creditor.[8]

On August 6, 2020, the Debtor filed her Second Amended Schedules which did not include either Holtz, Party One A or Party One B as an Additional Creditor.[9]

On August 19, 2020, the Debtor filed her Third Amended Schedules which did not include either Holtz, Party One A or Party One B as an Additional Creditor.[10]

On September 28, 2020, the Movant, on behalf of Party One A and Party One B, sent Debtor's counsel a letter (the "Arbitration Demand Letter"). Holtz maintains that after the Petition Date, the Debtor breached material terms of the Non-disclosure Undertaking in the Settlement and Confidentiality Agreement, and that the alleged breaches effectively deprived Party One A and Party One B of the benefits that they bargained for under the agreement.

On October 20, 2020, the Debtor filed her Fourth Amended Schedules to include Holtz as an Additional Creditor on her Unsecured Creditor List.[11] The schedules show Holtz as holding a claim of "$0.00" that was incurred on "12/2/2019" and that is based upon "Agreement – Party One A and Party One B."

On October 20, 2020, Debtor's counsel mailed two copies of the Fourth Amended Schedules by dropping a post-paid wrapper containing a copy in an official depository of the United States Postal Service to Holtz, addressed to each of the following:

THE HOLTZ FIRM
21650 OXNARD STREET
SUITE 500

---

[8]   *See* Amended Schedule E/F to Include Guarantor, Suzanne Murphy, ECF No. 6.

[9]   *See* Amended Schedule E/F to Include Additional Creditors, ECF No. 9.

[10]  *See* Amended Schedule E/F to Include Additional Creditors, ECF No. 10.

[11]  *See* Amended Schedule E/F to Include Additional Creditor – The Holtz Firm, ECF No. 11 at 9.

WOODLAND HILLS, CA 91367-4911

THE HOLTZ FIRM
C/O MICHAEL D. HOLTZ, ESQ
21650 OXNARD STREET, SUITE 500
WOODLAND HILLS, CA 91367-4911[12]

On November 9, 2020, the Movant commenced the Arbitration by filing a demand for arbitration under the Settlement and Confidentiality Agreement against the Debtor with JAMS in Century City, California, on behalf of Party One A and Party One B (the "Initial Arbitration Demand") and on account of the Debtor's alleged "Breach of Contract" and "Breach of Covenant of Good Faith and Fair Dealing." *See* Initial Arbitration Demand ¶¶ 6-12, 13-16.

On November 16, 2020, the Debtor filed her Fifth Amended Schedules to include two additional creditors: Ana Bianci and Counsel and Spectrum.[13] The Fifth Amended Schedules listed Holtz as a creditor with the same information contained in the Fourth Amended Schedules.

On November 16, 2020, Debtor's counsel mailed two copies of the Fifth Amended Schedules to Holtz by United States Postal Service at the same addresses contained in the Fourth Amended Schedules.[14]

On February 1, 2021, the Court issued the Debtor her Discharge and Order of Final Decree (the "Discharge Notice").[15]

---

[12]    *See* Affidavit of Service, Amended Schedule E/F to Include Additional Creditor – The Holtz Firm, ECF No. 11-2.

[13]    *See* Amended Schedule E/F to Include Additional Creditor(s) Ana Bianchi and Counsel, Spectrum, ECF No. 12.

[14]    *See* Affidavit of Service, Amended Schedule E/F to Include Additional Creditor(s) Ana Bianchi and Counsel, Spectrum, ECF No. 12-2.

[15]    *See* Discharge of Debtor(s) and Order of Final Decree, ECF No. 13.

On February 4, 2021, the Clerk of the Court mailed a copy of the Discharge Notice by first class mail to Holtz at the address used by the Debtor's counsel in mailing Holtz the Fourth and Fifth Amendments to Schedules.[16]

On February 4, 2021, the Clerk closed the Chapter 7 Case.

On April 27, 2021, the Movant filed the Motion to Reopen Case pursuant to section 350(b) of the Bankruptcy Code, Bankruptcy Rule 5010 and Local Rule 5010-1. In the motion, it explains that it seeks to reopen the Chapter 7 Case for the sole purpose of filing and adjudicating a motion for relief from the automatic stay, *nunc pro tunc* to the point in time after the Petition Date and before Movant received notice of the Chapter 7 Case when Movant sent the Arbitration Demand Letter to the Debtor and filed the Initial Arbitration Demand with JAMS commencing the Arbitration. *See* Motion To Reopen Case ¶ 1. The allegations in support of the Initial Arbitration Demand do not specify whether the Debtor's alleged breaches of the Settlement and Confidentiality Agreement occurred prior to or after the Petition Date. In support of the Motion To Reopen Case, the Movant explains that it would pursue the Initial Arbitration Demand only with respect to the Debtor's alleged actions and omissions after the Petition Date and would not seek to enforce the Settlement and Confidentiality Agreement for any of the Debtor's alleged actions and omissions prior to the Petition Date**.** *Id*.

The Debtor did not file a response to the Motion To Reopen Case, but she appeared *pro se* at the May 28, 2021, hearing on the motion (the "May 28 Hearing"). Upon the record of the May 28 Hearing, and by order dated June 10, 2021, the Court granted the Motion To Reopen

---

[16]     *See* Certificate of Notice, ECF No. 14 at 3.

Case, and directed that "[w]ithin no more than thirty (30) days after the entry of this Order on the

docket of the Case, the Movant shall file and serve its [Stay Relief Motion]."[17]

On July 8, 2021, the Movant filed the Stay Relief Motion pursuant to section 362(d)(1) of

the Bankruptcy Code and Bankruptcy Rules 4001 and 9014 and Local Rule 4001-1. As support

for the Motion, the Movant explains that it

> seeks relief from stay to encompass actions taken after the [D]ebtor filed her
> [Chapter 7] Case on July 7, 2020 (the "Petition Date") but before [Movant] received
> notice of the [Chapter 7] Case, and authorization to continue to prosecute the [Initial
> Arbitration Demand] to enforce the [Settlement and Confidentiality Agreement]
> but only for any violations after the Petition Date . . ."

Stay Relief Motion ¶ 1. It emphasizes that "[f]or the avoidance of doubt, *[Movant] does not*

*assert or seek to assert or recover any claim against Debtor whatsoever for any breach of the*

*[Settlement and Confidentiality Agreement] that may have existed as of the Petition Date." Id.*

¶ 2. Thus, as filed, the Stay Relief Motion seeks

> the entry of an order granting relief from stay *nunc pro tunc* to September 28, 2020,
> the point in time after the Petition Date and before [Movant] received notice of the
> [Chapter 7] Case, including a "comfort order" granting relief from stay to cover
> action taken before [Movant] received notice of the [Chapter 7] Case, and
> authorizing [Movant] to continue to prosecute the extant [Initial Arbitration
> Demand] to enforce the [Settlement and Confidentiality Agreement] but only for
> any violations after the Petition Date . . . .

*Id.* ¶ 20.

Movant contends that there is "cause" under section 362(d)(1) to grant it stay relief to

prosecute the Arbitration because it is entitled to enforce the Settlement and Confidentiality

Agreement, including the Non-disclosure Undertaking therein, "because undertakings to refrain

from acting are not claims that are subject to discharge." *Id.* ¶ 24. It maintains that application of

the "*Sonnax* Factors" demonstrates that cause exists to grant it the relief from stay as requested.

---

[17]   *See* Order Reopening Case, ECF No. 24.

*Id.* ¶¶ 25–27. It also argues that application of the "*Stockwell* Factors" demonstrates that "[r]etroactive relief from stay, *nunc pro tunc* to September 28, 2020, is also appropriate under the unique circumstances here presented . . . ." *Id.* ¶ 28. Specifically, Movant says that it is entitled to such relief "because Debtor omitted listing [Movant] in the Debtor's schedules, and [Movant's] actions in sending a demand letter and commencing the Arbitration were done without knowledge of the [Chapter 7 Case]." *Id.* ¶ 22. Movant maintains that "[it] is entitled to enforce the [Settlement and Confidentiality Agreement] for Debtor's actions and omissions arising after the Petition Date [and] should have no potential exposure to [its] technical violations of the automatic stay of which [Movant] had not received notice." *Id.* (citation omitted).

Movant submitted a declaration of Michael D. Holtz, Esq. in support of the Stay Relief Motion.[18] In it, among other things, Mr. Holtz states, as follows:

> I did not receive notice of the [Chapter 7] Case until I received the Discharge Notice, dated February 1, 2021. This Discharge Notice was my first notice received in the [Chapter 7] Case. I never received any notice of the [Chapter 7] Case from Debtor or Debtor's counsel.

Holtz Decl. ¶ 3. He states:

> I received the Discharge Notice after I had already sent Debtor and her former counsel a demand letter in September 2020, and after I had already thereafter commenced the Arbitration in Los Angeles. At the time I took these actions, I had no actual or constructive knowledge that the [Chapter 7] Case had been filed.

*Id.* ¶ 4. Finally, he states that "I never received any notice of the Fourth Amended Schedules, or the [Chapter 7] Case itself, from Debtor or her counsel", *id.* ¶ 9, and that "[p]romptly after receiving the Discharge Notice, I ceased all action in connection with the Arbitration other than

---

[18]    *See* Declaration of Michael D. Holtz in Support of Motion for Relief from Stay *Nunc Pro Tunc,* Pursuant to Section 363(d)(1) of the Bankruptcy Code, ECF No. 26 (the "Holtz Declaration" or "Holtz Decl.").

to notify and direct the tribunal (JAMS) that the Arbitration be stayed and not pursued pending

my seeking relief from this Court." *Id*. ¶ 5.

> Mr. Holtz asserts that the Court should grant Movant stay relief, as follows:

> Creditor and Debtor are parties to the [Settlement and Confidentiality Agreement] pursuant to which Debtor received a substantial monetary payment. The [Settlement and Confidentiality Agreement] provides that the exclusive manner of resolution of disputes thereunder shall be through binding, confidential arbitration.

> Creditor has suffered and will continue to suffer harm as a consequence of Debtor's post-petition breaches of the [Settlement and Confidentiality Agreement]. By the Arbitration, the [Settlement and Confidentiality Agreement] would be enforced only for Debtor's Post-Petition actions and omissions occurring or arising after the Petition Date.

> If the Motion were granted, I would promptly file an amended statement in the Arbitration to seek enforcement of the [Settlement and Confidentiality Agreement] only for Debtor's actions and omissions arising after the Petition Date.

*Id*. ¶¶ 6–8.

The Stay Relief Motion was set for a telephonic hearing on August 10, 2021, with

responses, if any, to be served and filed on or before August 3, 2021. On July 29, 2021, the

Debtor, acting *pro se*, filed a letter with the Court in which she advised, in substance, that she

objected to the Motion and requested the opportunity to be heard on the Motion.[19] She also

requested an adjournment of the hearing on the Motion in order to have sufficient time to retain

counsel and bring counsel "up to speed." *Id.* The Court denied the Debtor's request for an

adjournment without prejudice to her right to renew that request at the August 10 hearing.[20]

---

[19]   *See* ECF No. 30. In support of the letter, the Debtor filed a copy of electronic correspondence with Movant in which she requested additional time to object to the Motion. *See* ECF No. 33.

[20]   *See* Memorandum Endorsed Order, dated August 2, 2021, ECF No. 31.

On August 4, 2021, acting *pro se*, the Debtor filed an objection to the Stay Relief Motion (the "*Pro Se* Objection").[21] Without limitation, in support of the *Pro Se* Objection the Debtor contends that on October 20, 2020, Movant received notice of the Chapter 7 Case and had ample time to seek stay relief prior to February 4, 2021, when the Court closed the case, and that the claims that Movant is asserting in the Initial Arbitration Demand have been discharged in the Chapter 7 Case. *See Pro Se* Objection ¶¶ 2, 6, 7, 15-20.

On August 6, 2021, Movant filed a reply to the *Pro Se* Objection (the "Reply").[22] In it, Movant contends that the Stay Relief Motion "is well grounded in the facts and the law, including because the obligation to comply with the [Settlement and Confidentiality Agreement] is not a 'claim' that was discharged because it does not require the expenditure of money." *Id.* ¶ 5 (citation omitted). Movant also asserted that "[t]he requested relief [in the Initial Arbitration Demand] would not require Debtor to expend any funds, or to take any action, or to do anything at all whatsoever; it merely permits Creditor to enforce the [Settlement and Confidentiality Agreement], which prohibits Debtor from affirmatively breaching her undertaking for which Debtor received a substantial monetary payment." *Id.* ¶ 4. Holtz did not file a copy of the Initial Arbitration Demand with the Stay Relief Motion. As noted below, notwithstanding Movant's contention to the contrary, the Initial Arbitration Demand clearly seeks only monetary relief against the Debtor.

On August 9, 2021, Maureen T. Bass, Esq., as counsel to the Debtor, filed a Notice of Appearance in this case.[23] At the August 10 telephonic hearing, Ms. Bass appeared on behalf of

---

[21]    *See* Notice Of Objection To Motion For Relief For Stay *Nunc Pro Tunc,* ECF No. 34.

[22]    *See* Reply In Support of Motion For Relief From Stay *Nunc Pro Tunc*, ECF No. 37.

[23]    *See* Notice of Appearance and Demand for Service of Papers, ECF No. 39.

the Debtor. She did not renew the Debtor's request to adjourn the hearing and argued in

opposition to the Stay Relief Motion. The Court continued the hearing on several occasions to

afford the parties an opportunity to resolve the Motion amicably. They were unable to do so, and

they submitted a joint scheduling order (the "Scheduling Order") which called for the Debtor to

file an additional response to the Motion, and for the Movant to reply to the additional

response.[24]

The Initial Arbitration Demand seeks the arbitration of the Debtor's alleged Breach of

Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing. In it, Party One A

and Party One B contend, in substance, that the Debtor breached material terms of the Settlement

and Confidentiality Agreement, that those breaches have the effect of depriving them of their

benefits under the agreement, and that they are entitled to (i) an award obligating the Debtor to

return any monetary consideration for which she previously received pursuant to the Settlement

and Confidentiality Agreement; (ii) an award of liquidated damages to compensate them for the

damages resulting from alleged material breaches of the Settlement and Confidentiality

Agreement; (iii) an award obligating the Debtor to make full disgorgement of any money or

other consideration which she received from any third party as a result of alleged unauthorized

disclosure of Confidential Information; and (iv) costs of the arbitration and interest at the

maximum legal rate. *See, e.g.,* Initial Arbitration Demand at 8, Prayer for Relief ¶¶ 1-3.

On October 22, 2021, the Debtor submitted her Supplemental Objection to the Motion.[25]

The Debtor contends that the Court should deny Movant's request for stay relief because

---

[24]    *See* Scheduling Order, ECF No. 46.

[25]    *See* Debtor's Response to Motion of the Holtz Firm for Relief from Stay *Nunc Pro Tunc,* Pursuant to Section
362(d)(1) of the Bankruptcy Code, Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedures, and Local
Rule 4001-1, ECF No. 45 (the "Suppl. Obj.").

prosecution of the Initial Arbitration Demand violates the Discharge Injunction, since Movant is

asserting damage claims on account of her alleged breaches of the Settlement and Confidentiality

Agreement which can only be asserted as dischargeable pre-petition claims, irrespective of

whether the alleged breaches occurred pre or post-petition. *See* Suppl. Obj. at 3–4. She also

asserts that in asking the Court to allow it to continue to prosecute the Arbitration in Los Angeles

against the Debtor residing in New York, Movant has failed to submit copies of the Initial

Arbitration Demand and the Settlement and Confidentiality Agreement and failed to identify the

alleged breaches of the Settlement and Confidentiality Agreement. *Id.* at 5.[26] She asserts that

Movant has not demonstrated that application of the *Sonnax* Factors supports its request for stay

relief. She maintains that there is no cause for the lifting of the stay as (i) there is a complete

absence of information as to the Arbitration that the Movant wishes to prosecute against the

Debtor, including whether the Settlement and Confidentiality Agreement would even be

enforceable under New York or California law, and (ii) allowing the Arbitration to proceed

would cause extraordinary hardship and vitiate any opportunity Debtor has at a fresh start. *Id.* at

7.

The Debtor also contends that should the Court grant stay relief, it should not grant *nunc*

*pro tunc* relief, or issue a comfort order with respect to actions that Movant took after October

25, 2020 (i.e., five days after Debtor's counsel mailed copies of the Fourth Amended Schedules

to Movant). *See* Suppl. Obj. 2-3. The Debtor contends that there is a rebuttable presumption that

Movant had constructive notice of the pendency of this Chapter 7 Case no later than October 25,

---

[26]    As noted previously, the Debtor subsequently was provided full and complete access to the Settlement and
Confidentiality Agreement, as well as to the Initial Arbitration Demand and Proposed New Arbitration Demand. *See
supra.* n.2 Moreover, based on the *in camera* review of the Settlement and Confidentiality Agreement, that Court is
satisfied that the Movant has sufficiently identified alleged breaches of that agreement.

16

2020, that Movant has not rebutted the presumption and, accordingly Movant is not entitled to a comfort order for actions that it took in connection with the Arbitration after October 25, 2020. *Id.* Moreover, the Debtor notes that in the Holtz Declaration, Mr. Holtz asserts that he intends to file "an amended statement in the Arbitration to seek enforcement of the Settlement and Confidentiality Agreement only for Debtor's actions and omissions arising after the Petition Date." *Id.* at 3 (quoting Holtz Decl. ¶ 8). The Debtor contends that, as an amendment to the Initial Arbitration Demand is warranted, Movant does not need *nunc pro tunc* relief except as to bootstrap a defense to a stay violation charge. She maintains that a denial of the requested "comfort relief" will simply preserve the status quo (especially as stay violation relief is not ripe at this moment) and in no way prejudices Movant. *See* Suppl. Obj. at 3.

On November 12, 2021, Movant filed a Supplemental Reply[27] and the Supplemental Holtz Declaration[28] in support of the Motion. In its Supplemental Reply, Movant modifies the relief it is seeking in the Motion. Movant no longer seeks leave to prosecute the Initial Arbitration Demand to recover monetary damages from the Debtor based on her alleged post-petition violations of the Non-disclosure Undertaking in the Settlement and Confidentiality Agreement. Instead, Holtz seeks leave to file a demand to arbitrate the Debtor's alleged post-petition Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing, but pursuant to which Holtz would seek injunctive relief, not monetary damages. Holtz says that if the Court grants *nunc pro tunc* stay relief, **"the extant Arbitration would be limited to**

---

[27]  *See* Supplemental Reply in Support of Motion for Relief from Stay *Nunc Pro Tunc*, Under Section 362(d)(1) of the Bankruptcy Code, Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure, and Local Rule 4001-1, ECF No. 48 ("Suppl. Reply"). The Movant attached a proposed order granting the Stay Relief Motion (the "Proposed Order") as Exhibit 1 to the Supplemental Reply.

[28]  *See* Supplemental Declaration of Michael D. Holtz in Support of Motion for Relief from Stay *Nunc Pro Tunc*, Pursuant to Section 362(d)(1) of the Bankruptcy Code, ECF No. 49 (the "Suppl. Holtz Decl.").

**Debtor's post-petition violations of the [Settlement and Confidentiality Agreement] and Movant would only seek injunctive relief**." *See* Suppl. Reply at 3. Holtz says that to effectuate that change in the scope of the Arbitration, it "would be required by the proposed order on the Motion to make a superseding demand seeking only injunctive relief for post-petition violations of the [Settlement and Confidentiality Agreement], and Debtor would not be exposed to any monetary consequences as a result thereof . . . ." *Id.*[29] Holtz submitted a form of its Proposed New Arbitration Demand that seeks only injunctive relief to redress the Debtor's alleged post-petition Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing.[30] Holtz reiterates that application of the *Sonnax* Factors supports its request for stay

---

[29]    In part, the Proposed Order states, as follows:

> 3. Movant is granted relief from stay pursuant to 11 U.S.C. § 362(d)(1) *nunc pro tunc* to September 28, 2020, and specifically, Movant shall not be in violation of the "automatic stay" for sending a demand letter and commencing the extant Arbitration after the Petition Date and before entry of this Order.

> 4. Movant may proceed to prosecute the extant Arbitration; *provided, however,* that Movant shall first issue an amended and superseding demand for relief at such Arbitration (the "Superseding Demand") that may seek only injunctive relief for any allegation(s) that Debtor violated the Non-disclosure Undertaking (as defined in the Motion) after the Petition Date. For the avoidance of doubt:

>> A. The Superseding Demand may not seek, and Movant may not seek or receive at such Arbitration, any award for monetary damages for Debtor's alleged violation of the Non-disclosure Undertaking, whether such alleged violation of the Nondisclosure Undertaking allegedly occurred before or after the Petition Date.

>> B. The Superseding Demand may not seek any relief for any allegations that Debtor violated the Non-disclosure Undertaking before the Petition Date.

>> C. Nothing herein shall be construed as expressing any opinion as to the merits of any Superseding Demand.

Proposed Order ¶¶ 3-4.

[30]    *See* Proposed New Arbitration Demand ¶¶ 11, 15, Prayer of Relief ¶¶ 1-2.

relief and that application of the *Stockwell* Factors demonstrates that *nunc pro tunc* stay relief is
appropriate in this case. *See* Suppl. Reply at 4-7, 8-10.

## Discussion

Section 362(a)(1) of the Bankruptcy Code states that the filing of a bankruptcy petition
creates an automatic stay against "the commencement or continuation . . . of a judicial,
administrative, or other action or proceeding against the debtor that was or could have been
commenced before the commencement of the case." 11 U.S.C. § 362(a)(1). This section is meant
to provide "complete, immediate, albeit temporary relief to the debtor from creditors, and also to
prevent dissipation of the debtor's assets before orderly distribution to creditors can be
effected." *SEC v. Brennan*, 230 F.3d 65, 70 (2d Cir. 2000) (quoting *Penn Terra Ltd. v. Dep't of
Env't. Res.*, 733 F.2d 267, 271 (3d Cir. 1984)).

The automatic stay in the Chapter 7 Case was effective immediately on the Petition Date.
*See, e.g.*, *Shimer v. Fugazy (In re Fugazy Express, Inc.)*, 982 F.2d 769, 776 (2d Cir. 1992)
("Section 362 of the Code operates, immediately upon a debtor's filing of a bankruptcy petition,
to, *inter alia*, stay automatically any act to transfer control over property of the estate."). On
February 1, 2021, the stay terminated automatically when the Debtor received her discharge in
bankruptcy. *See* 11 U.S.C. § 362(c)(2)(C) ("[I]f the case is a case under chapter 7 of this title
concerning an individual . . . [the stay of any act under section 362(a) continues to] the time a
discharge is granted or denied."); *see also In re Covelli*, 550 B.R. 256, 266 (Bankr. S.D.N.Y.
2016) ("Where the debtor receives a discharge, the automatic stay terminates and the discharge
injunction permanently takes its place."); *In re Wilson*, 492 B.R. 691, 695 (Bankr. S.D.N.Y.
2013) ("In a chapter 7 case of an individual, the automatic stay continues only 'until the time a
discharge is granted or denied.'") (citing § 362(c)(2)(C)). The termination of the stay under

19

section 362(c)(2)(C) does not operate retroactively. *In re Sklar*, 626 B.R. 750, 761 (Bankr.

S.D.N.Y. 2021) (citing *E. Refractories Co. Inc. v. Forty Eight Insulations Inc.*, 157 F.3d 169,

172 (2d Cir. 1998) (noting that "[a]n order 'terminating' an automatic stay operates only from

the date of entry of the order," as opposed to retroactively)).

　　　　Actions taken in violation of the automatic stay are void and unenforceable. *See Rexnord

Holdings, Inc. v. Bidermann*, 21 F.3d 522, 527 (2d Cir. 1994) ("[A]ny proceedings or actions

described in section 362(a)(1) are void and without vitality if they occur after the automatic stay

takes effect.") (citing *48th St. Steakhouse, Inc. v. Rockefeller Grp., Inc.* (*In re 48th St.

Steakhouse, Inc.*), 835 F.2d 427, 431 (2d Cir. 1987), *cert. denied,* 485 U.S. 1035, 108 S.Ct. 1596,

99 L.Ed.2d 910 (1988)) (internal citations omitted)); *see also Off. Comm. of Unsecured

Creditors of Arcapita Bank B.S.C. (c) v. Bahrain Islamic Bank (In re Arcapita Bank B.S.C. (c))*,

628 B.R. 414, 479 (Bankr. S.D.N.Y. 2021) ("[S]o central is the [Section] 362 stay to an orderly

bankruptcy process that actions taken in violation of the stay are void and without effect.")

(quoting *In re Colonial Realty Co.*, 980 F.2d 125, 137 (2d Cir. 1992) (citations and quotations

omitted)); *Chimera Cap., L.P. v. Nisselson (In re MarketXT)*, 428 B.R. 579, 585 (S.D.N.Y. 2010)

("The arbitration panel rendered the [arbitration award] while the stay was in effect. The Award,

therefore, violated the stay and was void."). That is the case, "even where the acting party had no

actual notice of the stay." *In re Sklar*, 626 B.R. at 761 (quoting *Hearst Magazines v. Stephen L.

Geller, Inc.*, No. 08 Civ. 11312 (LLS), 2009 WL 812039, at *1 (S.D.N.Y. Mar. 25, 2009)); *see

also Smith v. First Am. Bank, N.A. (In re Smith)*, 876 F.2d 524, 526 (6th Cir. 1989) (even if

creditor has no notice of stay, actions taken in violation of stay are generally void); *In re Killmer*,

513 B.R. 41, 49 (Bankr. S.D.N.Y. 2014) (proceedings or actions taken in violation of stay are

void and without legal effect "even if a creditor received no notice of the stay"); *In re Ebadi*, 448

B.R. 308, 318 (Bankr. E.D.N.Y. 2011) (noting that any action taken in contravention of the

automatic stay is void *ab initio*, "even if the violation were done unknowingly").

It is settled that section 362 extends to arbitration proceedings. *See Cardali v. Gentile, (In

re Cardali)*, No. 10-11185 (SHL), 2010 WL 4791801, at *1 (Bankr. S.D.N.Y. Nov. 18, 2010)

(lifting the automatic stay to permit arbitration to proceed). Holtz violated the automatic stay

when it sent the Arbitration Demand Letter to Debtor's counsel and when it filed the Initial

Arbitration Demand with JAMS commencing the Arbitration. As such, those actions are void

and of no effect. *See Savers Fed. Savs. & Loan Ass'n v. McCarthy Constr. Co. (In re

Knightsbridge Dev. Co.)*, 884 F.2d 145, 148 (4th Cir. 1989) (arbitration award issued post-

petition violated stay and was void even though based on pre-petition evidence); *see also In re

Heating Oil Partners, LP*, 422 F. App'x 15, 18 (2d Cir. 2011) (entry of a default judgment

violated the stay and so was "void *ab initio*"); *Hamm v. R.H. Macy & Co.*, No. 93 Civ. 1446

(LAP), 1994 WL 507717, at *2 n.1 (S.D.N.Y. Sept. 13, 1994) (noting that the appropriate action

for cases filed prepetition is to place them on the suspense docket, while "[i]n situations where

the complaint was filed after bankruptcy, ... dismissal is appropriate because the filing of the

complaint itself was void"). Accordingly, there is effectively no arbitration proceeding pending

against the Debtor under the Settlement and Confidentiality Agreement. *See In re Columbus

Broadway Marble Corp.*, 84 B.R. 322, 326-27 (Bankr. E.D.N.Y. 1988) (finding state court action

commenced post-petition void, denying application to remove the state court action and

instructing trustee to commence adversary proceeding); *In re Gen. Am. Commc'ns Corp.*, 130

B.R. 136, 148 (Bankr. S.D.N.Y. 1991) ("First, there is no present State Court action pending

against [the debtor] from which these proceedings may be abstained. Defendants' Texas State

Court action against [the debtor] was commenced after [the debtor] filed its bankruptcy petition and is void *ab initio* as a violation of the Bankruptcy Code's automatic stay under § 362.").

Section 362(d)(1) of the Bankruptcy Code permits a court to grant stay relief, for "cause", on motion of a party in interest and after notice and a hearing. 11 U.S.C.§ 362(d)(1). That section "permits bankruptcy courts to lift the automatic stay retroactively and thereby validate actions that would be void." *Soares v. Brockton Credit Union (In re Soares)*, 107 F.3d 969, 976 (1st Cir. 1977); *see also In re WorldCom, Inc.*, 325 B.R. 511, 519 (Bankr. S.D.N.Y. 2005) ("When an action has been commenced in violation of the stay, that action can only be made legitimate by an order retroactively validating the action."). Thus, granting a request for *nunc pro tunc* stay relief has the effect of retroactively validating "otherwise void actions post-petition." *In re Best Payphone, Inc.*, 279 B.R. 92, 98 (Bankr. S.D.N.Y. 2002); *see also In re Bell*, No. 95 B 45288 (SMB), 1995 WL 17819381, at *1 (Bankr. S.D.N.Y. Dec. 29, 1995) (granting motion for relief from stay *nunc pro tunc*, entering an "order annulling the automatic stay and retroactively validating the eviction"). The party seeking retroactive stay relief has the burden to make a *prima facie* showing of cause. *In re WorldCom, Inc.*, 325 B.R. at 521. It is not easy to meet that burden. Chief Judge Glenn recently noted –

> [A] request for retroactive relief from the automatic stay should be granted sparingly. If retroactive relief becomes commonplace, creditors—anticipating *post facto* validation—will be tempted to pursue claims against bankrupts heedless of the stay, leaving debtors with no choice but to defend for fear that post-petition default judgments routinely may be resuscitated. Accordingly, retroactive relief should be the long-odds exception, not the general rule.

*In re Sklar*, 626 B.R. at 763 (internal citations omitted) (internal quotation marks omitted).

On February 1, 2021, the Debtor received her discharge in bankruptcy. A discharge under section 727(a) of the Bankruptcy Code "discharges the debtor from all debts that arose" before

the filing of the bankruptcy petition. 11 U.S.C. § 727(b). The term "debt" means "liability on a

claim." 11 U.S.C. § 101(12). The term "claim" means:

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
>
> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5). The parties correctly analogize the Debtor's Non-disclosure Undertaking in

the Settlement and Confidentiality Agreement to a debtor's obligations under a covenant not to

compete. *See* Suppl. Obj. at 4; *see also* Suppl. Reply at 6-7. Courts hold that damage claims

arising from pre- and post-petition breaches of a covenant not to compete are dischargeable

claims in bankruptcy. *See In re Annabel*, 263 B.R. 19, 28 (Bankr. N.D.N.Y. 2001) (holding that

"[a]ny monetary damages awarded to [creditor] in state court arising from the Debtor's [post-

petition] breach of the covenant not to compete were discharged pursuant to the . . . Order of

Discharge."); *In re Peltz*, 55 B.R. 336, 338 (Bankr. M.D. Fla. 1985) (holding that a claim for

damages on a post-petition breach of a pre-petition covenant not to compete was discharged). In

contrast, courts hold that a claim for injunctive relief to bar a violation of a non-compete

agreement is not a dischargeable claim under the Bankruptcy Code where the payment of

monetary damages is not an available substitute for the injunctive relief. *See In re LaFemina*,

Case No. 14-43362 (NHL), 2017 WL 4404254, at *3-7 (Bankr. E.D.N.Y. Sept. 30, 2017)

(collecting cases); *see also In re Annabel*, 263 B.R. at 27 ("[I]n the context of a chapter 7

bankruptcy, the discharge injunction will not affect the enforcement of a party's injunctive breach

remedy on a debtor's covenant not to compete where compliance requires simple abstention from

conduct and does not give rise to monetary payment."); *In re Gacharna*, 480 B.R. 909, 912-13

(Bankr. N.D. Ill. 2012) (injunctive provisions in settlement agreement for misappropriation of trade secrets not a claim). Under the Settlement and Confidentiality Agreement, an aggrieved party to the agreement can obtain both monetary damages and injunctive relief to redress violations of the agreement.

Under the Stay Relief Motion, Holtz seeks leave to file and prosecute the Proposed New Arbitration Demand against the Debtor. In that demand, Holtz does not seek monetary damages. Rather, it seeks only injunctive relief to enjoin the Debtor's alleged post-petition violations of the Non-disclosure Undertaking in the Settlement and Confidentiality Agreement. Holtz also seeks stay relief retroactive to September 28, 2020 to do so because, in the first instance, Holtz wants that demand to relate back to, and supersede, the Initial Arbitration Demand. In contrast to the Proposed New Arbitration Demand, in the Initial Arbitration Demand, Party One A and Party One B seek monetary damages from the Debtor for general unsecured claims based on the Debtor's alleged post-petition breaches of the Non-disclosure Undertaking in the Settlement and Confidentiality Agreement.[31]

In assessing the merits of the Stay Relief Motion, the Court first considers whether Holtz has demonstrated grounds for granting it leave to file the Proposed New Arbitration Demand against the Debtor. In *Sonnax Indus. Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir.1990), the Second Circuit established a twelve-factor test (the "*Sonnax* Factors") to determine whether cause exists under section 362(d)(1) of the Bankruptcy

---

[31]   They are seeking (i) an award obligating the Debtor to return any monetary consideration for which she previously received pursuant to the Settlement and Confidentiality Agreement; (ii) an award of liquidated damages to compensate them for the damages resulting from alleged material breaches of the Settlement and Confidentiality Agreement; (iii) an award obligating the Debtor to make full disgorgement of any money or other consideration which she received form any third party as a result of alleged unauthorized disclosure of Confidential Information; and (iv) costs of the arbitration and interest at the maximum legal rate. *See, e.g.*, Initial Arbitration Demand at 8, ¶¶ 1-3.

Code, to continue an ongoing litigation in another forum.[32] Holtz argues that application of the

*Sonnax* Factors supports its request for leave to pursue the extant Arbitration, as amended by the

Proposed New Arbitration Demand to seek only injunctive relief barring the Debtor's alleged

post-petition violations of the Non-disclosure Undertaking. *See* Suppl. Reply at 4-7. In opposing

the Motion, the Debtor focuses on the twelfth *Sonnax* Factor (impact of the stay on the parties

and the balance of harms). *See* Suppl. Obj. at 5-6. The Court finds that the parties' reliance on

*Sonnax* is misplaced because the Settlement and Confidentiality Agreement includes a written

agreement to arbitrate the claims of Breach of Contract and Breach of the Implied Covenant of

Good Faith and Fair Dealing at issue in the arbitration demands.

The Federal Arbitration Act, 9 U.S.C. § 1, *et seq*. (the "FAA"), provides that a written

agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as

exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. By its terms, the FAA

"establishes a 'federal policy favoring arbitration agreements,' and mandates the enforcement of

contractual arbitration provisions." *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 107 (2d Cir.

2000) (internal citations omitted) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr.

Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). In light of the "strong federal

---

[32]    The *Sonnax* Factors are as follows:

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any
> connection with or interference with the bankruptcy case; (3) whether the other proceeding involves
> the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been
> established to hear the cause of action; (5) whether the debtor's insurer has assumed full
> responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether
> litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment
> claim arising from the other action is subject to equitable subordination; (9) whether movant's
> success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the
> interests of judicial economy and the expeditious and economical resolution of litigation; (11)
> whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the
> parties and the balance of harms.

*In re Sonnax Indus., Inc.*, 907 F.2d at 1286 (citing *In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984)).

policy favoring arbitration, the traditional [*Sonnax*] balancing test . . . for seeking relief from the automatic stay does not apply." *In re Cardali*, 2010 WL 4791801, at \*4. Rather, in applying the FAA to litigation in bankruptcy cases, courts undertake a four-part inquiry: (1) whether the parties agreed to arbitrate; (2) whether the dispute falls within the arbitration clause; (3) if federal statutory claims are raised, whether Congress intended those claims to be arbitrable; and (4) if the court concludes that some but not all of the claims are arbitrable, whether it should stay the non-arbitrable claims pending the conclusion of the arbitration. *See id.* at \*4–5 (collecting cases). Under the Settlement and Confidentiality Agreement, the Debtor and Party One A and Party One B agreed to arbitrate all claims of breach of the agreement, and the claims at issue in the Motion fall squarely within the four corners of the arbitration provisions of the agreement. Party One A and Party One B do not seek to assert statutory claims in either the Initial Arbitration Demand or the Proposed New Arbitration Demand and there are no non-arbitrable claims over which this Court would have jurisdiction raised in either demand. Accordingly, the Court finds that there are grounds for granting Holtz leave to file the Proposed New Arbitration Demand. Moreover, Holtz can do so without running afoul of the Discharge Injunction, because Holtz's claims for injunctive relief under the agreement are not dischargeable claims in the Chapter 7 Case. *See In re LaFemina*, 2017 WL 4404254, at \*3-7; *In re Annabel*, 263 B.R. at 27; *In re Gacharna*, 480 B.R. at 913.

In reaching this determination, the Court notes that the Debtor opposes the Stay Relief Motion, in part, on the grounds that she is destitute and, as such, the prosecution of the arbitration demand would vitiate her fresh start. *See* Suppl. Obj. at 6 ("Without resources to fend off an arbitration on another coast, it is unlikely that [the Debtor] will be in a position to do anything but ultimately default."). She also contends that there are questions whether and the

extent to which the Non-disclosure Undertaking is enforceable under New York and California law. *See id.*

The Court overrules those objections. The Debtor has not submitted any evidence demonstrating that the Non-disclosure Undertaking is unenforceable. Moreover, although the Court is sympathetic to the Debtor's financial challenges, they do not provide grounds for denying Holtz's request for leave to file and prosecute the Proposed New Arbitration Demand. The case of *In re LaFemina* is instructive. There the debtor was party to a franchise agreement that included a non-compete clause. Pre-petition, the debtor terminated the agreement and opened a competing business in New York. *See In re LaFemina*, 2017 WL 4404254, at *2. The franchisor contended that the debtor was violating the non-compete clause and pre-petition, commenced an arbitration proceeding under the franchise agreement in Colorado in which it sought to enjoin the debtor's operation of the alleged competing business. *Id.* The debtor filed a chapter 11 petition and continued to operate the competing business. The franchisor sought stay relief to prosecute the arbitration. *Id.* at *2-3. In opposing the motion, the debtor argued, in part, that she would be harmed by stay relief because the financial burden associated with defending arbitration in Colorado would impede her fresh start. *Id*. at *9. The court found no merit to that argument. In part, it reasoned that the debtor was attempting to use the automatic stay as a sword since it was continuing to operate the competing business even as the debtor was arguing that the automatic stay barred the franchisor from enforcing the non-compete clause in the franchise agreement. As relevant, the court stated, as follows:

> Movant argues that it continues to suffer harm as a result of the Debtor's breach of the Franchise Agreement by continuing to operate her competing business. The Debtor asserts that she would be harmed by stay relief because the financial burden associated with defending the Arbitration in Colorado would impede her fresh start. While one of the underlying policy goals of bankruptcy is to "relieve the honest debtor from the weight of indebtedness which has become oppressive, and to permit

27

him to have a fresh start in business or commercial life," this goal does not serve as a tool to deflect responsibility for a debtor's postpetition actions. *Wetmore v. Markoe*, 196 U.S. 68, 77 (1904) (holding that the debtor's fresh start did not relieve him of his nondischargeable prepetition domestic support obligations). Here, the Debtor's fresh start entails relief from dischargeable debts that were incurred prepetition; it does not relieve her of responsibility for her postpetition operation of a new business if in violation of the covenants not to compete. *See Hurvitz*, 554 B.R. at 40 ("[Debtor] points out that his fresh start ... will be threatened. But since his undertaking not to compete with [franchisor] will survive his bankruptcy discharge, [debtor] faces this threat regardless. It is not granting stay relief that will harm [debtor], it is his promise not to compete with [franchisor]."). To hold otherwise would be to impermissibly enable the Debtor to use bankruptcy as a sword, rather than as a shield. *In re Hirschhorn*, 156 B.R. 379, 389 (Bankr. E.D.N.Y. 1993) ("[B]ankruptcy is intended to be used as a shield and not as a sword. In contending that the non-compete clause has expired, the Debtor seeks to use the protective shield of the extensions which were intended to aid the Debtor in its reorganization as a sword with which to stab its landlord.") (citations omitted).

*Id.* The rationale of *In re LaFemina* is directly applicable herein. Holtz contends that the Debtor is violating the Non-disclosure Undertaking in the Settlement and Confidentiality Agreement. The Debtor cannot seek to enforce the automatic stay or Discharge Injunction while she allegedly inflicts damage on Holtz by violating the Non-disclosure Undertaking.[33] Moreover, Holtz is not seeking monetary damages and the injunctive relief it is seeking does not call for the Debtor to expend money to comply with such relief.

---

[33]    The result would be the same if the Court applied the *Sonnax* Factors to the Stay Relief Motion, as modified. Application of the first, second, fourth and tenth *Sonnax* Factors weighs in favor of granting Holtz leave to file the Proposed New Arbitration Demand, because the exclusive manner for resolving claims for alleged breaches of the agreement that are at issue herein, is through confidential arbitration under the JAMS Rules in Los Angeles, California; and the arbitration will not interfere with the Debtor's "no asset" Chapter 7 Case because it was reopened solely for the Court to consider the Motion. The eleventh *Sonnax* Factor is not relevant because the Movant is seeking leave to proceed with the Arbitration. The conduct of an arbitration proceeding will not prejudice the interests of other creditors because their claims were discharged in the Chapter 7 Case and, in any event, Movant now is not seeking monetary relief. It is seeking merely to enforce the injunction barring disclosure of Confidential Information that the Debtor agreed to (and was compensated for) under the Settlement and Confidentiality Agreement. Accordingly, application of the seventh, eighth and ninth *Sonnax* Factors weighs in favor of granting Holtz leave to proceed with the Arbitration, and the third, fifth and sixth *Sonnax* Factors are not applicable in this case. As noted, the twelfth *Sonnax* Factor is the "impact of the stay on the parties and the balance of harms." That factor supports granting Holtz relief to proceed with an arbitration because, as discussed above, the Debtor is using the automatic stay/Discharge Injunction as a sword to Holtz's prejudice.

Having determined that Holtz has demonstrated grounds to grant it leave to file the Proposed New Arbitration Demand, the Court considers whether to provide Holtz retroactive stay relief to do so. In *In re Stockwell*, 262 B.R. 275 (Bankr. D. Vt. 2001), the movant sought retroactive stay relief to validate a foreclosure judgment it had obtained post-petition. In considering whether to grant *nunc pro tunc* stay relief, the court reviewed the following list of nonexclusive, disjunctive reasons (the "*Stockwell* Factors") that courts have used for granting retroactive annulment of the automatic stay:

> (1) if the creditor had actual or constructive knowledge of the bankruptcy filing and, therefore, of the stay; (2) if the debtor has acted in bad faith; (3) if there was equity in the property of the estate; (4) if the property was necessary for an effective reorganization; (5) if grounds for relief from the stay existed and a motion, if filed, would likely have been granted prior to the automatic stay violation; (6) if failure to grant retroactive relief would cause unnecessary expense to the creditor; and (7) if the creditor has detrimentally changed its position on the basis of the action taken.

*Id.* at 281 (citations omitted). Courts in this circuit apply the *Stockwell* Factors in analyzing requests for retroactive stay relief. *See, e.g.*, *In re MarketXT*, 428 B.R. at 587; *In re Jean-Francois,* 516 B.R. 699, 704 (E.D.N.Y. 2014); *In re Cunningham*, 506 B.R. 334, 344 (Bankr. E.D.N.Y. 2014); *In re Sklar*, 626 B.R. at 763. The Court will do so here.

Holtz wants the Proposed New Arbitration Demand to relate back to and supersede and amend the Initial Arbitration Demand. It argues that application of the *Stockwell* Factors supports its request for retroactive stay relief to replace the Initial Arbitration Demand with the Proposed New Arbitration Agreement, but in so contending, it misapplies those factors to the request for injunctive relief in the Proposed New Arbitration Demand. *See* Suppl. Reply at 5, 7.[34] Because

---

[34] In contending that application of the fifth *Sonnax* Factor supports its claim for stay relief, Holtz asserts that "Factor 5 is not antithetical to relief because only injunctive relief would be sought by the extant Arbitration in accordance with the Proposed Order. No insurance coverage is implicated." Suppl. Reply at 5. Holtz contends that it has satisfied the fifth *Stockwell* Factor, as follows:

> As for the fifth factor, the motion for relief would have been granted based on the same basis that the instant Motion should be granted, as the same grounds exist for granting such relief.

Holtz wants the filing of the Proposed New Arbitration Demand to relate back to the filing of the

Initial Arbitration Demand, at issue is whether Holtz is entitled to retroactive stay relief to

validate and give effect to the filing of the Initial Arbitration Demand. The Court considers that

matter below.

<u>Application of the First *Stockwell* Factor</u>

On October 20 and November 16, 2020, Debtor's counsel mailed copies of the Fourth

and Fifth Amended Schedules to the Movant. Each listed "The Holtz Firm" as a creditor in the

case. The Debtor contends that there is a rebuttable presumption that Holtz received the

schedules and was on constructive notice of the pendency of this Chapter 7 Case, and the

automatic stay, no later than October 25, 2020. She also contends that Holtz has failed to rebut

that presumption, and, as such, at minimum, it had constructive notice of the Chapter 7 Case

when it filed the Initial Arbitration Demand and commenced the Arbitration. *See* Suppl. Obj. at

2-3.

"Under general New York law, . . . the Second Circuit has indicated that mailing a letter

creates a presumption that the addressee received it." *Bronia, Inc. v. Ho*, 873 F. Supp. 854, 859

(S.D.N.Y. 1995) (citing *Meckel v. Cont'l Res. Co.,* 758 F.2d 811, 817 (2d Cir. 1985)). "While the

Second Circuit has recognized that the postal system is not one hundred percent reliable, the

Supreme Court has 'repeatedly recognized that mail service is an inexpensive and efficient

mechanism that is reasonably calculated to provide actual notice.' " *In re R.H. Macy & Co., Inc.*,

161 B.R. 355, 359 (Bankr. S.D.N.Y. 1993) (quoting *Tulsa Pro. Collection Serv., Inc. v. Pope*,

485 U.S. 478, 490 (1988)); *Weigner v. City of New York*, 852 F.2d 646, 649-50 (2d Cir. 1988),

*cert. denied*, 488 U.S. 1005 (1989). Accordingly, "[m]ail properly (1) addressed (2) stamped and

---

*Id.* at 9.

(3) deposited in the mail system is presumed to have been received by the party to whom it was addressed." *Randbre Corp. v. Ladney (In re Randbre Corp.)*, 66 B.R. 482, 485 (Bankr. S.D.N.Y. 1986) (citing *Hagner v. United States*, 285 U.S. 427, 430 (1932)); *see also In re WorldCom, Inc.*, No. 02-13533 (AJG), 2005 WL 3875192, at *3 (Bankr. S.D.N.Y. Oct. 27, 2005) ("A rebuttable presumption that an addressee received a mailed notice arises when the mailing party submits sufficient evidence to demonstrate the notice was properly addressed and mailed.") (citations omitted); *Cablevision v. Malandra (In re Malandra)*, 206 B.R. 667, 673 (Bankr. E.D.N.Y. 1997) ("[M]ail which is properly addressed, stamped and deposited in the mail system creates a rebuttable presumption of receipt by the party to whom it has been addressed. The presumption applies in bankruptcy cases, and a debtor may invoke the presumption of receipt based upon the court's certificate of mailing.").

The presumption can be raised either by evidence showing that the mail was sent through regular office procedures, or through an affidavit of the person who actually supervised or carried out the mailing. *See In re O.W. Hubbell & Sons, Inc.*, 180 B.R. 31, 34 (N.D.N.Y. 1995) (citation omitted); *see also In re Barquet Group*, 477 B.R. 454, 462 n.7 (Bankr. S.D.N.Y. 2012) ("The sender must provide evidence of actual mailing in the form of an affidavit submitted by an individual who supervised the mailing to allow the presumption to arise.") (citation omitted). Once the sender establishes the presumption of receipt of mail properly addressed and mailed, the burden shifts to the party denying receipt to rebut the presumption. *See In re Residential Capital*, Case No. 12-12020 (MG), 2014 WL 3798622, at *10 (Bankr. S.D.N.Y. July 31, 2014) ("Given that the presumption of receipt was raised, the burden shifted to [movant] to rebut the presumption."). "Although the presumption is rebuttable, [t]his presumption of receipt is very strong and can only be rebutted by specific facts and not by invoking another presumption and

31

not b[y] a mere affidavit to the contrary…. Evidence of an objective nature going beyond the claimant's statement of non-receipt is necessary." *In re Great Atlantic & Pacific Tea Co., Inc.*, 604 B.R. 650, 658 (Bankr. S.D.N.Y. 2019) (internal quotation marks omitted) (citation omitted). *See also In re Dana Corp.*, No. 06–10354 (BRL), 2007 WL 1577763, at *4 (Bankr. S.D.N.Y. May 30, 2007). A "mere denial of receipt does not rebut [the] presumption." *Meckel v. Cont'l Res. Co.*, 758 F.2d at 817; *see also In re Ricketts*, 80 B.R. 495, 497 (B.A.P. 9th Cir. 1987) ("If a party were permitted to defeat the presumption of receipt of notice resulting from the certificate of mailing by a simple affidavit to the contrary, the scheme of deadlines and bar dates under the Bankruptcy Code would come unraveled.").

Debtor's counsel mailed copies of the Fourth and Fifth Amended Schedules to Holtz, as counsel to Party One A and Party One B, on October 20, 2020 and November 16, 2020, respectively. *See* Affidavit of Service, ECF No. 11-2; Affidavit of Service, ECF No. 12-2. Accordingly, there is a presumption that Mr. Holtz received the schedules and, as such, in late October 2020, had knowledge of the case and of the automatic stay. *See, e.g.*, *In re Adler, Coleman Clearing Corp.*, 204 B.R. 99, 104–05 (Bankr. S.D.N.Y. 1997) (finding that an affidavit submitted by the president of the company stating that he oversaw the mailing of claims packages was sufficient evidence to trigger the presumption that the claimants received the packages); *In re Bernard L. Madoff Inv. Securities LLC*, No. 13 Civ. 4332 (ALC), 2014 WL 1302660, at *4 (S.D.N.Y. Mar. 31, 2014) (finding that an affidavit submitted by an employee of the debtors' claims agent was sufficient to trigger the presumption that an addressee received a mailing).

The burden is on the Movant to rebut that presumption that it received the schedules. Mr. Holtz asserts that "I did not receive notice of the [Chapter 7] Case until I received the Discharge

32

Notice, dated February 1, 2021." Holtz Decl. ¶ 3. He insists that "[t]his Discharge Notice was my

first notice received in the [Chapter 7] Case" and that "I never received any notice of the Case

from Debtor or Debtor's counsel." *Id.* He also contends that "I received the Discharge Notice

after I had already sent Debtor and her former counsel [the Arbitration Demand Letter] in

September 2020, and after I had already thereafter commenced the Arbitration in Los Angeles."

*Id.* ¶ 4. He maintains that "[a]t the time I took these actions, I had no actual or constructive

knowledge that the [Chapter 7] Case had been filed." *Id.* Finally, he says that "I never received

any notice of the Fourth Amended Schedules, or the [Chapter 7] Case itself, from Debtor or her

counsel." *Id.* ¶ 9. In the Supplemental Holtz Declaration, Michael Holtz addresses the latter issue

again, as follows:

> I receive mail, and I received the Discharge Notice, at my offices in Los Angeles,
> California. Due to the worldwide COVID-19 pandemic, and in accordance with
> stay-at-home orders in effect in California, my offices were closed during all of the
> months of October, November, and December of 2020, among other months.
> During the period when my offices were closed, including without limitation the
> foregoing identified months, the delivery of mail to my offices was intermittently
> interrupted. To my knowledge, after inquiry, no mail that was received at my
> offices was not delivered to me.

Suppl. Holtz Decl. at ¶ 4.

The Movant contends that the uncontroverted facts establish that it did not have actual

knowledge of the Chapter 7 Case before it issued the Initial Arbitration Demand and commenced

the extant Arbitration, and that there is no evidence before the Court to the contrary. *See* Suppl.

Reply at 8. It also asserts that it should not be charged with constructive knowledge of the

Chapter 7 Case at all based on Michael Holtz's testimony that (i) he did not receive notice of the

Chapter 7 Case until February 2021, (ii) his offices were closed during all of the months of

October, November, and December of 2020, among other months; and (iii) Debtor's Fourth

Amended Schedules were mailed on October 20, 2020, in the midst of a global pandemic which

had led to the closure of its law offices and the intermittent interruption of Movant's mail. *See id.*; Holtz Decl. ¶ 3; Suppl. Holtz Decl. ¶ 4. Mr. Holtz also maintains that Debtor's Fourth Amended Schedules were mailed two weeks before the 2020 presidential election at a time in which the U.S. Mail was experiencing delivery delays. *See* Suppl. Reply at 8.[35]

"Federal courts in New York have held 'quite uniformly' that an affidavit of non-receipt is insufficient to rebut the presumption of receipt created by proof of mailing." *In re AMR Corp.*, 492 B.R. 660, 663-64 (Bankr. S.D.N.Y. 2013) (citations omitted). Rather, "[a]dditional evidence, other than an addressee's mere denial of receipt is required to rebut the presumption that the addressee received a properly addressed notice." *In re WorldCom, Inc.*, 2005 WL 3875192, at *3 (citing *Meckel v. Cont'l Res. Co.*, 758 F.2d at 817). In his declarations, Mr. Holtz does little more than deny that he had knowledge of the Chapter 7 Case in September and November 2020, and deny that he received the Fourth and Fifth Amended Schedules. He makes no effort to

---

[35]   In support of the last point, Holtz relies on *Jones v. United States Postal Service*, 488 F.Supp.3d 103, 118 (S.D.N.Y. Sept. 21, 2020) ("Whether mail delivery delays have occurred is not in dispute. At an August 24, 2020 hearing before the House Oversight and Reform Committee, [Postmaster General of the United States] DeJoy acknowledged that there was a decline in presort First-Class Mail service since July" arising both to the COVID-19 pandemic and the November 2020 election").

   In that case, plaintiffs filed suit against the United States Postal Service, the Postmaster General and the President of the United States challenging policy and operational changes made at the U.S. Postal Service in the runup to the 2020 general presidential election that led to an increase in mail delays. Plaintiffs sought declaratory relief establishing that the changes and attendant mail delays violated plaintiffs' First Amendment right to vote and Fifth Amendment right to have their votes equally counted because they "put the ability of voters to timely cast their ballots at risk." *See id.* at 119-120. The case does not discuss the presumption that mail properly addressed, stamped and deposited in the mail system is presumed to have been received by the addressee, *see In re Randbre Corp.*, 66 B.R. at 485, and makes no conclusion regarding the impact mail delays might have on the long-standing principle underlying the presumption recognized by the Supreme Court that the "mail service is an inexpensive and efficient mechanism that is reasonably calculated to provide actual notice." *Tulsa Pro. Collection Serv., Inc. v. Pope*, 485 U.S. 478, 490 (1988). Moreover, the evidence presented in that case only established that the U.S. Postal Service was facing delays of "two or three days behind its usual service standard." *Jones v. United States Postal Serv.*, 488 F.Supp. 3d at 119; *see also id.* at 122 ("A two-day mail delivery delay occasioned by postal operations, even if unintentional, would only increase the likelihood of impairing voting rights."). As discussed below, without further evidence from someone with direct knowledge of the Movant's office mail room procedures and how general two or three-day delays did, in fact, impact the Movant's receipt of mail, the case relied on by the Movant cannot support its contention that it should not be held to have had constructive notice a reasonable amount of time after the Debtor mailed the Fourth Amended Schedules to Holtz.

explain the procedures, if any, that he had in place to monitor the delivery of mail to his offices during the months of October, November, and December of 2020, and to collect that mail. He has not met his burden of rebutting the presumption that he received the Fourth and Fifth Amended Schedules because his statements amount to nothing more than the "mere denial of receipt" insufficient to rebut the presumption. *See, e.g.*, *In re Robinson*, 228 B.R. 75, 82 (Bankr. E.D.N.Y. 1998) (finding respondents failed to rebut the presumption where they did not provide, *inter alia*, (i) an "affidavit from any person *directly* involved in the mail handling procedures" or (ii) any information regarding "procedural safeguards [used] to ensure that the notices are appropriately handled") (emphasis added); *In re Malandra*, 206 B.R. at 670, 674 (finding rebuttal insufficient where affidavits merely (i) recounted the recipient's mail processing procedures, (ii) averred that had the relevant document been received it would have been seen, and (iii) denied receipt); *In re Hobbs*, 141 B.R. 466, 467, 469 (Bankr. N.D. Ga. 1992) (concluding that affidavits were "essentially unsupported general denials" where they only stated the forwarding procedures of the relevant entities "and that the employees [had] no recollection of receiving such notices"); *In re R.H. Macy & Co., Inc*., 161 B.R. at 360 (court found that "self-serving submissions asserting non-receipt of the proof of claim package and the enclosed Notice of Entry of Bar Order is insufficient to rebut the aforementioned presumption of receipt"); *CUNA Mut. Ins. Grp. v. Williams (In re Williams)*, 185 B.R. 598, 600 (B.A.P. 9th Cir. 1995) (finding inadequate evidence describing only a "business routine regarding receipt of mail").

The first *Stockwell* Factor considers whether "the creditor had actual or constructive knowledge of the bankruptcy filing and, therefore, of the stay." *In re Stockwell*, 262 B.R. at 281. Mr. Holtz's uncontroverted testimony is that, notwithstanding the fact that the amended schedules were mailed to his office in October and November 2021, he did not have actual

knowledge of the Case before he received the Discharge Notice from the Clerk in or about February 2021. *See* Holtz Decl. ¶¶ 3-4. Still, based on the foregoing, the Court finds that Mr. Holtz is presumed to have received the Fourth and Fifth Amended Schedules and to have had notice of their contents. *See Bronia, Inc. v. Ho*, 873 F. Supp. at 859 ("Against this backdrop, the real factual issue to be resolved by the hearing was whether the notices were in fact mailed to Tradefield. If they were, even by regular mail, Tradefield is presumed to have received the mailings and thus to have had notice of their contents."). The undisputed evidence shows that when Mr. Holtz learned of the Chapter 7 Case, he promptly contacted JAMS to stay the Arbitration and, thereafter, caused Holtz promptly to file the Motion To Reopen Case. After the Court reopened the case, Holtz promptly filed the Stay Relief Motion and has aggressively prosecuted the motion. The Court finds that Mr. Holtz and his firm acted in good faith in commencing the Arbitration and in promptly seeking stay relief upon Mr. Holtz's receipt of the Discharge Notice. Moreover, the Debtor has not demonstrated that she has been harmed, in any way, by Holtz's violation of the automatic stay in commencing the Arbitration. Nonetheless, Holtz is deemed to have been on notice of the automatic stay when it filed the Initial Arbitration Demand commencing the Arbitration. *See In re R.H. Macy & Co., Inc.*, 161 B.R. at 360 (finding that "Movant's respective self-serving submissions asserting non-receipt of the proof of claim package and the enclosed Notice of Entry of Bar Order is insufficient to rebut the aforementioned presumption of receipt" and finding each movant to be deemed to have received notice of the bar date, even where all parties agreed movants acted in good faith and no evidence suggested otherwise).

Notwithstanding Holtz's good faith efforts to comply with the automatic stay, application of the first *Stockwell* Factor does not support granting Holtz retroactive stay relief.

Application of the Second *Stockwell* Factor

The second *Stockwell* Factor focuses on whether the Debtor acted in bad faith in failing

to schedule Holtz as a creditor. The Debtor contends that as of the Petition Date, Holtz was a

creditor holding a contingent unsecured damage claim under the Settlement and Confidentiality

Agreement. Nonetheless, she did not schedule Holtz as a creditor in her Chapter 7 Petition and

waited over three months to add Holtz as an Additional Creditor to the Unsecured Creditor List.

Holtz contends that the record indicates that in filing her schedules, the Debtor appears to have

acted in bad faith. *See* Suppl. Reply at 9. As support, Holtz asserts that: (i) the Debtor did not

include Holtz in her original schedules filed in the Chapter 7 Case, (ii) the Debtor failed to

disclose Holtz as a creditor in her First, Second and Third Amended Schedules, and (iii) the

Debtor testified under penalty of perjury at her meeting of creditors—held August 3, 2020, more

than two months before she filed her Fourth Amended Schedules including Holtz as a creditor on

October 20, 2020—that her schedules were true, complete and correct. *See id.*

The Debtor says that she did not schedule Holtz as a creditor in the Unsecured Creditor

List filed with the Chapter 7 Petition, because as of the Petition Date, she had "forgotten" about

Holtz. *See Pro Se* Objection ¶ 15 (explaining that "[t]he august 19th and oct 20th [amendments]

added creditors was because of creditors still being in touch with me that I had forgotten about.

Verizon and Holtz."). She says that in late September 2020, she reached out to her bankruptcy

counsel to add Holtz to the creditor list. She explains that "I sent an email on 9/29 asking my

lawyer to add the Creditor, Holtz, to the [Unsecured Creditor] [L]ist after I got an email

forwarded to a former attorney demanding I not participate in a television show." *Id.* ¶ 16; *see*

*also id.* ¶ 12 ("I alerted the Aranow Firm to put Holtz's creditors on the petition since sept

29th."). She asserts that "[i]t took over 3 weeks, but My lawyer Aranow filed an amendment on

37

10/20/20 including the Holtz Firm c/o Michael Holtz Esq 21650 Oxnard Street suite 500

woodland hills Ca 91367. The Holtz firm was properly given notice of being added as a

creditor." *Id.* ¶ 17.

It is difficult to understand how the Debtor could have "forgotten about" Holtz's interest

in the Chapter 7 Case. However, it is undisputed that the Debtor reached out to her bankruptcy

counsel to cause them to add Holtz to the Unsecured Creditor List promptly after learning that

her former counsel had received the Arbitration Demand Letter from Holtz. *See id.* ¶ 16. Holtz

has not demonstrated that the Debtor acted in bad faith in the dilatory scheduling of its claim.

Application of this factor does not support Holtz's request for *nunc pro tunc* stay relief.

Application of the Third and Fourth *Stockwell* Factors

Where property of the estate is at issue, the third and fourth *Stockwell* factors require the

Court to consider whether a debtor has equity in the property and whether the property is

necessary for an effective reorganization. *See In re Stockwell*, 262 B.R. at 281. By their terms,

the third and fourth *Stockwell* Factors are not relevant to the Stay Relief Motion.

Application of the Fifth *Stockwell* Factor

The fifth *Stockwell* Factor calls for the Court to consider whether grounds for stay relief

existed when Holtz filed the Initial Arbitration Demand commencing the Arbitration, and

whether it is likely that the Court would have granted Holtz stay relief to file the demand, had it

sought such relief. *In re Stockwell*, 262 B.R. at 281. In the Initial Arbitration Demand, Party One

A and Party One B assert general unsecured claims for monetary damages from the Debtor based

on the Debtor's alleged breaches of the Non-disclosure Undertaking in the Settlement and

Confidentiality Agreement.[36] As previously noted, those general unsecured claims are

---

[36] They are seeking (i) an award obligating the Debtor to return any monetary consideration for which she
previously received pursuant to the Settlement and Confidentiality Agreement; (ii) an award of liquidated damages

dischargeable claims under the Bankruptcy Code. *See In re Annabel*, 263 B.R. at 28; *In re Peltz*, 55 B.R. at 338.

The burden on the party seeking relief from the automatic stay to prosecute an unsecured claim is especially heavy. "[T]he general rule is that claims that are not viewed as secured in the context of § 362(d)(1) should not be granted relief from the stay unless extraordinary circumstances are established to justify such relief." *In re Leibowitz*, 147 B.R. 341, 345 (Bankr. S.D.N.Y. 1992); *accord Lawrence v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, No. 10 Civ. 36 (RJH), 2010 WL 4966018, at *4 (S.D.N.Y. Nov. 8, 2010); *In re Residential Capital*, *LLC*, 501 B.R. 624, 643–44 (Bankr. S.D.N.Y. 2013). That is because "to do so would result in a violation of one of the fundamental concepts of bankruptcy law; that there should be an equality of distribution among creditors." *In re Leibowitz*, 147 B.R. at 345.[37] An order providing Holtz with *nunc pro tunc* stay relief to validate the Initial Arbitration Demand would run afoul of the concept of equality of distribution among creditors. That is so because such an order would give effect to and validate the Initial Arbitration Demand – as filed – seeking monetary damages for alleged violations of the Settlement and Confidentiality Agreement. *See In re Best Payphones, Inc.*, 279 B.R. 92, 98 (Bankr. S.D.N.Y. 2002) ("[A]n order annulling the automatic stay *nunc pro tunc* acts retroactively to validate otherwise void actions taken post-petition."); *In re Taub*, 438 B.R. 39, 51 (Bankr. E.D.N.Y. 2010) (annulling the automatic stay to retroactively validate and

---

to compensate them for the damages resulting from alleged material breaches of the Settlement and Confidentiality Agreement; (iii) an award obligating the Debtor to make full disgorgement of any money or other consideration which she received form any third party as a result of alleged unauthorized disclosure of Confidential Information; and (iv) costs of the arbitration and interest at the maximum legal rate. *See, e.g.*, Initial Arbitration Demand at 8, ¶¶ 1-3.

[37]    "In considering the fifth [*Stockwell*] factor, the appropriate analysis is whether relief would have been granted under the *Sonnax* Factors." *In re WorldCom, Inc.*, 325 B.R. at 522. However, as previously noted, the *Sonnax* Factors are not relevant to the issue of whether the Court would have granted Holtz stay relief to file and prosecute Initial Arbitration Demand. *See In re Cardali*, 2010 WL 4791801, at *4.

give effect to a day of proceedings that "the parties to the Second Divorce Action might be required to repeat[.]").

Holtz does not point to facts that would have justified granting it stay relief to prosecute the Initial Arbitration Demand in September 2020. Moreover, the strong federal policy favoring the enforcement of arbitration provisions in contracts does not present an "extraordinary circumstance" that could justify granting it stay relief to proceed with the Arbitration to liquidate and enforce its dischargeable unsecured monetary damage claims against the no-asset Debtor set forth in the Initial Arbitration Demand. *See In re Leibowitz*, 147 B.R. at 345 ("An unsecured claimant should not be entitled to obtain a distributive advantage over other unsecured claimants who are similarly enjoined from seeking distribution by any method other than in accordance with the distributive scheme under the Bankruptcy Code."). In reaching this conclusion, the Court finds no merit to Holtz's proposal that it be granted *nunc pro tunc* stay relief to validate the Initial Arbitration Demand, conditioned on the requirement that it abandon its money damage claims against the Debtor and file the Proposed New Arbitration Demand as an amendment to the Initial Arbitration Demand. *See* Suppl. Obj. at 3. Holtz cites no authority in support of the proposal, which plainly runs afoul of Judge Glenn's caution that "a request for retroactive relief from the automatic stay should be granted sparingly." *In re Sklar*, 626 B.R. at 763.

In the context of this case, the fifth *Stockwell* Factor is the most significant factor in assessing whether to grant Holtz *nunc pro tunc* stay relief to validate the Initial Arbitration Demand. Application of this factor does not support Holtz's request for such relief, as there were no grounds to grant Holtz leave to prosecute its dischargeable unsecured monetary damage claims against the Debtor under the Settlement and Confidentiality Agreement in September 2020, when it filed the Initial Arbitration Demand.

Application of the Sixth and Seventh *Stockwell* Factors

Holtz has not demonstrated that it has detrimentally changed its position regarding the enforcement of its rights under the Settlement and Confidentiality Agreement in the wake of the filing of the Initial Arbitration Demand. Moreover, Hotltz has not shown that the failure to grant it *nunc pro tunc* stay relief will cause Holtz to incur unnecessary expense because it seeks to file the Proposed New Arbitration Demand which it has already drafted. As such, application of the sixth and seventh *Stockwell* Factors do not support granting the Holtz *nunc pro tunc* stay relief.

The Court finds that Holtz has not met its heavy burden of demonstrating grounds for granting it *nunc pro tunc* stay relief to validate the Initial Arbitration Demand commencing the Arbitration. The Court denies Holtz's request for retroactive stay relief to September 2020, to file the Proposed New Arbitration Demand.

## **Conclusion**

Based on the foregoing, the Court grants Holtz leave to file the Proposed New Arbitration Demand with the JAMS arbitration panel, provided however, that Holtz is granted such relief solely to seek injunctive relief against the Debtor on account of her alleged post-petition violations of the Non-disclosure Undertaking in the Settlement and Confidentiality Agreement.

*[Remainder of page intentionally left blank]*

The Court denies Holtz leave to assert claims of monetary relief against the Debtor under the Settlement and Confidentiality Agreement. The Court also denies Holtz's request for retroactive stay relief to validate the filing and prosecution of the Initial Arbitration Demand and to file the Proposed New Arbitration Demand as superseding and amending the Initial Arbitration Demand. Finally, the Court denies Holtz's request for a "comfort order" finding that Holtz did not violate the automatic stay for action taken before Holtz received notice of the Chapter 7 Case.


IT IS SO ORDERED.

Dated: New York, New York
       August 4, 2022


                                        /s/ *James L. Garrity, Jr.*
                                        Hon. James L. Garrity, Jr.
                                        U.S. Bankruptcy Judge